J-A12010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C.W.H., A MNOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.J., MOTHER | : : : : : : | |
| | : | No. 3018 EDA 2022 |

Appeal from the Decree Entered November 7, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000343-2020

BEFORE:  OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                    **FILED JULY 18, 2023**

Appellant, C.J. ("Mother"), appeals from the decree entered on November 7, 2022, involuntarily terminating Mother's parental rights to her son, J.C.W.H. ("Child"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(2) and 2511(b).[1] We affirm.

We briefly set forth the facts and procedural history of this case as follows.  Child was born in August, 2017.  On the same day, the Department of Human Services received a report that Mother, a diagnosed schizophrenic, was not receiving mental health treatment or taking prescribed medication. On October 2, 2017, the trial court adjudicated Child dependent.  DHS placed Child with his maternal aunt ("Maternal Aunt"), where he currently resides. Mother was given reunification goals including, *inter alia*, receiving mental

---

[1]  The trial court also involuntarily terminated the parental rights of the Child's biological father.  He has not appealed.

health services, attending weekly, supervised visits with Child, and completing various parenting, housing, and employment programs. The trial court held multiple permanency review and status hearings between 2017 and 2019. Mother made progress with her mental health treatment, secured stable housing, completed parenting classes, and established regular visitation with Child. In December 2019, however, Mother was diagnosed with Stage 4 cervical cancer and, as a result, began receiving hospice care and grief counseling. On October 6, 2020, DHS filed a petition to involuntarily terminate Mother's parental rights to Child and to change Child's permanency goal from reunification to adoption. On August 4, 2022, DHS filed an amended petition to involuntarily terminate Mother's parental rights. The trial court held hearings on October 17, 2022 and November 7, 2022. On November 7, 2022, the trial court involuntarily terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(2) and (b). This timely appeal resulted.[2]

On appeal, Mother presents the following issues for our review:

1. Whether the trial court erred in terminating [Mother's] parental rights under 23 Pa.C.S.A. [§] 2511(a)(2), the evidence having been insufficient to establish [Mother's] continued incapacity caused Child to be without essential parental care, that [could not] be remedied[?]

---

[2] On December 3, 2022, Mother filed a timely notice of appeal with a corresponding concise statement of errors complained of on appeal as required pursuant to Pa.R.A.P. 1925(a)(2)(i). On January 12, 2023, the trial court filed a statement pursuant to Pa.R.A.P. 1925(a) noting that "the November 7, 2022 transcript reflects the trial court's reasoning and final determinations in-detail[.]" Trial Court 1925 Statement, 1/12/2023, at *1.

2. Whether the trial court erred in terminating [Mother's] parental rights under 23 Pa.C.S.A. § 2511(b), the evidence having been insufficient to establish termination of parental rights would best serve the needs and welfare of Child[?]

Mother's Brief at 5 (unnecessary capitalization omitted).

In her first issue presented, Mother contends that "[u]nder 23 Pa.C.S.A. [§] 2511(a)(2), the evidence was insufficient to establish [her] continued incapacity caused Child to be without essential parental care" or that such incapacity could not be remedied. *Id.* at 11. Mother concedes that she is "impaired due [to] having to cope with" cervical cancer, but maintains that "prior to [] being sick[,]" she completed many of her reunification goals, including completion of a parenting program, engagement in appropriate visits with Child, and attainment of stable housing. *Id.* at 12. Mother asserts that there was no evidence presented regarding her prognosis. *Id.* at 13. Mother maintains that the Juvenile Act was not intended to provide a procedure of "taking [children] from the weak and sickly and giving [them] to the healthy." *Id.* (case citation omitted).

We review involuntary termination orders for an abuse of discretion, which requires an error of law or a showing of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *See In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021) (citation omitted). In applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021); *see also In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). "The trial court, not the appellate court, is charged with

the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony." *In re Adoption of R.J.S.*, 901 A.2d 502, 506 (Pa. Super. 2006) (citations omitted). "In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence." *Id.* (citation omitted).

Pennsylvania's Adoption Act governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. §§ 2101-2938. Section 2511(a) provides grounds for involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). *See In re Adoption of R.J.S.*, 901 A.2d at 509.

Moreover, this Court has stated:

The [trial] court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

The [Pennsylvania] Supreme Court has defined parental duty as follows:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, [our Supreme C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert [her]self to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith, interest, and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations and quotations omitted).

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), which provides, in pertinent part:

**(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

We have previously determined:

- 5 -

Parental rights may be terminated under Section 2511(a)(2) if three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it. **Further, grounds for termination under subsection (a)(2) are not limited to affirmative misconduct; those grounds may include acts of incapacity to perform parental duties**.

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (emphasis added; internal citations and quotations omitted).

Furthermore, in relation to Section 2511(a)(2), our Supreme Court has found:

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citation omitted).

Similarly, an *en banc* panel of this Court has "acknowledged the unfortunate

and disheartening effect [involuntary termination due to incapacity] may have

on parents; however, that does not make it any less appropriate, for it is the needs and welfare of the child that are of paramount concern to this Court." *In re B.L.W.*, 843 A.2d 380, 387 (Pa. Super. 2004) (*en banc*) (citation omitted). "While tragic in our view, such sympathies cannot cloud the consideration of whether parental termination [best suits] the needs and welfare" of a child. *Id.*

Here, the trial court first acknowledged that "the difficult part of this case is [M]other" because DHS became involved due to her "mental health issues originally" and that Mother was "substantially compliant, [until] through no fault of her own[,] all of that changed when she was diagnosed with [] cervical cancer." N.T., 11/7/2022, at 154. The trial court pronounced that Mother admitted "she has difficulty standing for long periods of time [and] has to rely upon father, who [] would not be an appropriate caregiver" to Child. *Id.* The trial court opined that Mother "failed to perform parental duties [] due to her health circumstances and not her own intentional neglect[.]" *Id.* at 155. Accordingly, the trial court determined that "under [Section] 2511(a)(2)[,] grounds exist to terminate involuntarily [Mother's] parental rights" as her "health is such that she cannot care for [Child] alone, and that is no fault of her own." *Id.* The trial court noted that although Mother's cervical cancer has "taken the forefront[,]" Mother also "has not been engaged in mental health services since her [cancer] diagnosis" in 2019. *Id.* at 156. Although Mother was "very close" to reunification, her "physical ailment

changed that trajectory such that [Mother] has not been able to focus on her mental health since the hospice declaration." *Id.* at 156-157.

In making its decision, the trial court considered Mother's testimony but found credible the testimony of the DHS caseworkers and service providers involved in this matter, as well as the testimony of the Child's kinship provider, Maternal Aunt. *Id.* at 148 and 154. The trial court heard testimony that Mother "is too weak" to meet Child's needs. N.T., 10/17/2022, at 73. Mother was physically unable to attend Child's medical appointments. *Id.* at 31; N.T., 11/7/2022, at 16. She does not take Child to school. N.T., 11/7/2022, at 16. Mother has difficulty playing games with Child. N.T., 10/17/2022, at 72; *see also* N.T., 11/7/2022, at 40 (Mother testified, "I do stand up when [Child] asks me to play with him and I do, but I have to hurry up and sit down so I won't fall."). Mother is not able to run at all or walk any substantial distance. N.T., 10/17/2022, at 72. Maternal Aunt testified that Mother could not care for Child because "most of the time she can't get up or move around too much[.]" N.T., 11/7/2022, at 104. Mother testified that she "has good and bad days." *Id.* at 18. On good days, she "sits on [her front] step and that's the furthest [she] will go." *Id.* On bad days, Mother "just want[s] to stay in the house and [not] be bothered." *Id.*

Based upon our review of the certified record and applicable law, we discern no abuse of discretion in the involuntary termination of Mother's parental rights under Section 2511(a)(2). The aforementioned evidence reveals Mother's continued incapacity has caused Child to be without essential

parental care and that Mother's incapacity cannot be remedied. While it is certainly tragic that Mother has Stage 4 cervical cancer, a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties. The record supports the trial court's decision that Mother is physically and mentally incapacitated and cannot properly care for Child. By involuntarily terminating Mother's parental rights, the trial court recognized that Child's needs and welfare are the paramount concern of the Adoption Act. Accordingly, we conclude that the trial court did not abuse its discretion or err as a matter of law by involuntarily terminating Mother's parental rights under Section 2511(a)(2).

Next, Mother asserts that "the evidence was not sufficient to establish that termination of [her] parental rights would best serve the needs and welfare of [] Child, under 23 Pa.C.S.A. § 2511(b)." Mother's Brief at 13 (unnecessary capitalization omitted). Mother suggests that Child recognizes Mother as his biological mother, he runs to hug her when they see each other, and "would also look sad when time to leave." *Id.* at 14. Mother describes their relationship as "at times[, … ] a typical parent and child bond." *Id.* As such, Mother contends that under the best interest standard, there were no independent grounds to form the basis for involuntary termination under Section 2511(b). *Id.*

Section 2511(b) provides, in pertinent part:

**(b) Other considerations**.-- The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights

- 9 -

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.S.C.A. § 2511(b). "Above all else . . . adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights."

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

We have previously explained,

Our Supreme Court has made clear that § 2511(b) requires the trial court to consider the nature and status of bond between a parent and child. To the extent there is a bond, the trial court must examine whether termination of parental rights will destroy a necessary and beneficial relationship, thereby causing a child to suffer extreme emotional consequences. While a parent's emotional bond with his or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. In determining needs and welfare, the court may properly consider the effect of the parent's conduct upon the child and consider whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights.

Furthermore, our Supreme Court has stated [that] common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents.

[Our Supreme] Court [has] directed that, in weighing the bond considerations pursuant to § 2511(b), courts must keep the ticking clock of childhood ever in mind [because] children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail[,] the result, all too often, is catastrophically maladjusted children.

- 10 -

***Interest of M.E.***, 283 A.3d 820, 836–837 (Pa. Super. 2022) (internal citations, quotations, ellipses, and original brackets omitted). Moreover, we note that "[w]hen conducting a bonding analysis, the court is not required to use expert testimony. [Instead, s]ocial workers and caseworkers can offer evaluations as well." ***In re Z.P.***, 994 A.2d at 1121 (citation omitted).

In this case, with respect to Section 2511(b), the trial court opined "that [Child] and [M]other did not have a mother[-]son bond" and determined "that there would be [no] detrimental impact to terminating involuntarily [Mother's] parental rights." N.T., 11/7/2022, at 157. The trial court noted that Child "resides in the home with his [M]aternal [A]unt with whom he has resided since – almost since birth [a]nd so, his primary parent child bond is with his aunt, who he calls auntie mommy." ***Id.*** In further support of its decision, the trial court highlighted the fact that Mother testified it was her "wish" for Maternal Aunt to care for Child "if anything happened to" Mother. ***Id.*** A caseworker for DHS testified that Child looks to Maternal Aunt as his primary caregiver, believed adoption was the most appropriate goal for Child, and opined there would be no irreparable harm in terminating Mother's rights. N.T., 10/17/2022, at 46-47.

Upon review, we discern no trial court abuse of discretion or error of law in involuntarily terminating Mother's parental rights under Section 2511(b). Here, the trial court examined the bond between Mother and Child and determined that termination would not destroy a necessary and beneficial

relationship and that Child would not suffer extreme emotional consequences from severing that relationship. The trial court also considered intangibles, such as the love, comfort, security, stability, and the bond that Child has with Maternal Aunt. There was ample evidence that Maternal Aunt provides financial, educational, and emotional support for Child and that they are bonded. Mother's own feelings of love and affection for Child, alone, do not prevent termination of her parent rights. As such, Mother's second appellate issue lacks merit.

For all of the foregoing reasons, it was proper for the trial court to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2) and (b).

Decree affirmed.

Judge McLaughlin joins.

Judge Nichols concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2023